UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IN RE XETHANOL CORPORATION SECURITIES  :
LITIGATION                                                                 :         06 Civ. 10234 (HB)
------------------------------------------------------------------------  :
THIS DOCUMENT RELATES TO:                              :         **OPINION & ORDER**
                                                                                   :
All Actions                                                                  :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge\*:**

Plaintiffs Ronald Counsell, Clayton Antonio Leamons, John Zipay, Jr., and Ernest Shepherd (collectively "The Counsell Group" or "Lead Plaintiffs") bring this putative federal securities class action against Xethanol Corporation ("Xethanol" or the "Company"), Christopher D'Arnaud-Taylor ("Taylor"), Jeffrey S. Langberg ("Langberg"), and Lawrence S. Bellone ("Bellone") ("Individual Defendants") (collectively, "Defendants"). Plaintiffs allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 issued thereunder by the Securities Exchange Commission.

Defendants now move to dismiss Plaintiffs' Amended Consolidated Class Action Complaint ("Am. Compl." or "Amended Complaint") pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b). For the reasons set forth below, Defendants' Motion to Dismiss is DENIED.[1]

## I.    FACTUAL BACKGROUND

On March 14, 2007, I appointed Ronald Counsell, Clayton Antonio Leamons, John Zipay, Jr., and Ernest Shepherd as Lead Plaintiffs. Lead Plaintiffs aver that they purchased the common stock of Xethanol at artificially inflated prices between January 31, 2006 and August 7, 2006 (the "Class Period") and were damaged as a result thereof.

The underlying facts are set forth in detail in my prior opinion dismissing a related derivative action, *In re Xethanol Derivative Litigation*, 06-CV-15536 (HB), for failure to make a demand on the Board. Therefore, I present only an abbreviated factual background here.

---

\* Jessica Yuen, a summer 2007 intern in my Chambers, and currently a second-year law student at George Washington University Law School, provided assistance in the research and drafting of this Opinion.

[1] On February 6, 2007, I consolidated *Ariail v. Xethanol Corp., et al.*, 06cv10234, with six related actions: *Spoto v. Xethanol Corp., et al.*, 06cv11476; *Hamilton v. Xethanol Corp., et al.*, 06cv11477; *Difruscio v. D'Arnaud-Taylor, et al.*, 06cv11516; *Jones v. Xethanol Corp., et al.*, 06cv13128; *Lindberg v. D'Arnaud-Taylor, et. al.*, 06cv14448; *Lemoine v. Xethanol Corp., et. al.*, 06cv15176. On March 27, 2007, Plaintiffs amended their consolidated class action complaint. I granted Defendants' Motion to Dismiss *In re Xethanol Corporation Derivative Lit.*, 06cv15536, a related derivative action, on August 16, 2007.

Defendant Xethanol Corporation is a Delaware corporation with its principal place of business in New York, New York.  Defendant Taylor was Chairman, Chief Executive Officer and President of the Company throughout the Class Period.  Defendant Langberg was, during the Class Period, a member of the Board of Directors.  Defendant Bellone was Chief Financial Officer during the Class Period, a position that he has held since April 5, 2005.

Xethanol was incorporated in Delaware on January 24, 2000 to capitalize on the growing market for ethanol, a clean burning and renewable fuel that is a primary gasoline additive.  While ethanol is traditionally produced from corn, Xethanol's business strategy is to produce ethanol from biomass (generally post-industrial food or paper production waste).  Investors focused on this distinction because biomass, unlike corn, has zero or negative cost.  According to Plaintiffs, Defendants stated that the Company would follow a three-stage business model during the purported class period, January 31st through August 8th of 2006: (1) self-sustain on revenues produced from traditional corn ethanol production, (2) raise money from public and private investors, and (3) commercialize biomass ethanol production.

Plaintiffs allege violations pursuant to Sections 10(b) of the Exchange Act and Rule 10b-5.  Specifically, the Amended Complaint states that during the Class Period, Defendants knowingly or recklessly pursued and brought to fruition "a plan, scheme, and course of conduct which was intended to and, . . .did: (i) artificially inflate the price of Company shares; (ii) enable defendants to register for sale with the SEC millions of shares of Company stock held by insiders and/or defendants and also allow defendants to raise over $45 million through the private sale of equity, each while in possession of material adverse non-public information about Xethanol; (iii) enable certain insiders, including defendants Taylor and Langberg, to liquidate millions of dollars of their personally held Xethanol shares, also while in possession of material adverse non public information about the Company; and (iv) cause investors to purchase or acquire shares of Xethanol stock at artificially-inflated prices."  Am. Compl. ¶ 179.  Further, Plaintiffs allege that the Individual Defendants acted as controlling persons pursuant to Section 20(a) of the Exchange Act "[b]y virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public [and] had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Lead Plaintiffs contend are false and misleading."  Id. ¶ 191.

## II.     STANDARD OF REVIEW

A court must accept all well pled factual allegations in the complaint as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499 (2007) (citation omitted). Until recently, courts frequently applied the standard set forth in *Conley v. Gibson* that dismissal is inappropriate "unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957). However, it appears that this standard has been further nuanced and now, for a plaintiff to survive a motion to dismiss, he must provide "the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic v. Twombly*, 127 S.Ct.1955, 1964-65 (2007); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (holding that although a universal standard of heightened fact pleading is not required, courts should employ a "flexible plausibility standard" which "obliges a pleader to amplify [his] claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible") (emphasis in original).

## III.     DISCUSSION

### A.  Violations of Section 10(b) of the Exchange Act and Rule 10b-5

To establish liability under Section 10(b) and Rule 10b-5, a plaintiff must plead with particularity that the defendant (1) made a false statement or omitted a material fact, (2) with scienter, and (3) that plaintiff's reliance on defendant's action caused plaintiff injury. *Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir. 2004). Further, to plead fraud with particularity as required by Rule 9(b), the complaint must either explain why the statements were fraudulent or plead facts amounting to strong circumstantial evidence of conscious misbehavior or recklessness. *See Novak v. Kasaks*, 216 F.3d 300, 306, 311 (2d Cir. 2000), *cert. denied*, 531 U.S. 1012 (2002); *Acito v. Imcera Group, Inc.*, 47 F.3d 47 (2d Cir. 1995).

Since the arguments advanced by the parties focus on the sufficiency of Plaintiffs' scienter allegations, I will direct my discussion accordingly.[2] See Defendants' Motion to

---

[2] Defendants also argue that Plaintiffs have failed to show that the alleged misrepresentations or omissions caused economic harm (loss causation) and that the alleged violations caused Plaintiffs to engage in the alleged transactions (transaction causation). According to Plaintiffs, the Amended Complaint provides the alleged factual revelations which affected the stock price and consequently, their economic losses: (1) Defendant Taylor misrepresented his prior work and management experience at major U.S. corporations, the publication of which prompted his resignation, (2) Xethanol's Hopkinton Iowa plant was not operational or undergoing renovations as had been previously represented, and (3) Defendants failed to disclose several material related party transactions. Pls'

3

Dismiss the Amended and Consolidated Class Action Complaint ("Defs' Mem."), at 16.

To establish scienter, plaintiffs must plead with particularity facts giving rise to a "strong inference" that the defendant acted with the "intent[] to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, *187 (U.S. 2007) (internal citations omitted).  In *Tellabs*, the Supreme Court further clarified "scienter" within the meaning of the PSLRA: "[t]o qualify as 'strong,' . . . an inference of scienter must be more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudluent intent." *Id*. at *193.  To determine whether a complaint meets this threshold, a court must, accepting all factual allegations in the complaint as true, weigh the complaint in its entirety against "plausible nonculpable explanations for the defendant's conduct." *Id*.

Plaintiffs have pled facts which give rise to a "strong" inference of scienter.  Indeed, the facts alleged support an inference that is cogent and compelling in light of other explanations. Defendants' arguments that "Plaintiffs have not identified any reports or statements in which Defendants were made aware that the statements at issue were false" (Defs' Mem. at 20) and that "Plaintiffs base their scienter argument on conclusory statements" (Id. at 21) are unavailing. First, Plaintiffs point to letters and statements by two former Board members, Bernstein and Oppenheimer, in addition to statements made by anonymous former employees and a third-party witness to show that Defendants were told, knew or should have known that their statements about the financial health and development of ethanol technology were false when made. See, e.g., Am. Compl. ¶ 29 (former employee who reported directly to Taylor provided information that ¶ 34 (referring to information from Former Employee #1,[3] who worked in research and development, that he was "placed in 'a bad ethical situation' by the Company and 'told

---

Opposition to Defs' Motion to Dismiss, at 21-22. Since loss causation is a fact-based inquiry generally, and particularly here where the alleged loss was caused by the general fall in the price of Xethanol's stock, it is not an appropriate issue to be decided on a motion to dismiss.  *See, e.g., Montoya v. Momma.com Inc.*, No. 05-Civ.-2313 (HB), 2006 U.S. Dist. LEXIS 13207, *22-28 (S.D.N.Y. Mar. 28, 2006).

[3] While anonymous sources do not have to be identified, they do need to be sufficiently described to enable a court to infer that pursuit of this action beyond the motion to dismiss will likely produce witnesses in possession of information and documents to substantiate the statements.  Plaintiffs state that anonymous employee #1 was a vice president of business development at Xethanol, anonymous employee #2 reported directly to Taylor, anonymous employee #3 was a human resources manager at Xethanol for three months immediately after the Class Period, and anonymous third party witness #1 was a former employee of Global Energy and Management, one of the companies with whom Xethanol entered into a joint venture.  These descriptions are sufficient to allow the Court to infer that the witnesses are likely to possess the information contained in their statements.  Unlike the Plaintiffs in *In re BISYS Sec. Lit.*, 397 F. Supp. 2d 430 (S.D.N.Y. 2005) and *In re Alstom SA*, 406 F. Supp. 2d 433, 471-72 (S.D.N.Y. 2005), the Plaintiffs here have plead the positions of the informants.  It is reasonable to infer that with further discovery the vice president of business development or an employee reporting directly to Taylor could possess information to substantiate Plaintiffs' allegations.

[management that he] would not lie' about the extent of the progress that Xethanol had made towards making ethanol from any product other than corn."); ¶ 49 (referring to quote of former Board member Oppenheimer about Xethanol's public representations of its business plan: "[t]here's one tried and true way to make ethanol. You make it out of corn. Promising to make it out of waste? Well, you shouldn't promise what you can't deliver."); Ex. A to Declaration of Kim E. Miller in Support of Lead Plaintiffs' Opposition to Defendants' Motion to Dismiss (Nov. 9, 2006 Letter from Former Board Member, Louis Bernstein) (tendering his resignation) ("Consistent with my presentation during the special meeting of the Board of Directors held on Friday, November 3, 2006. . .my resignation is the result of my recent discovery of what I perceive to have been the lack of full disclosure both to certain members of the previous board, including myself, with respect to a certain transaction involving the Company, and to certain members of the current board, including myself, with respect to certain current relationships with the Company, and my disagreement with new management over its proposed business strategy for the Company."). Further, while there may be competing inferences for each of the statements above—for example, Defendants contend that statements by former directors are not evidence of fraud but rather "whining" and "sour grapes" because they were "displaced" and "lost their jobs." (Tr. (July 2, 2007), at 28:11-18)—taken as a whole as *Tellabs* and *Bell Atlantic* instruct, it is more plausible that these statements are sufficient to raise a right to relief "above the speculative level." *Bell Atlantic*, 127 S.Ct. at 1964-65. Defendants offer no alternate, more compelling inference to warrant dismissal.[4] In sum, the Amended Complaint, which complies with the pleading requirements established by the PSLRA, states a claim under Section 10(b) and Rule 10b-5.

### B. Violation of Section 20(a) of the Exchange Act against Individual Defendants

Because the only ground argued for dismissing the Plaintiffs' claim under Section 20(a) was the absence of a predicate violation of Section 10(b), the motion to dismiss that claim is also denied.

---

[4] Defendants, albeit in a conclusory fashion, contend that their statements are protected by the PSLRA's safe harbor provisions as forward looking statements. However, "[t]he touchstone of the inquiry is not whether isolated statements within a document were true, but whether defendant's representations or omissions, considered together and in context, would affect the total mix of information and thereby mislead a reasonable investor . . ." *In re Vecco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 235 (S.D.N.Y. 2006) (citation omitted). The mix of allegations pled by Plaintiffs in the Amended Complaint denies Defendants the benefit of safe harbor here.

## IV.   CONCLUSION

For the reasons above, Defendants' Motion to Dismiss is DENIED. This case will proceed in accordance with the February 6, 2007 Pretrial Scheduling Order.

The Clerk of the Court is instructed to close this matter and remove this motion from my docket.

**IT IS SO ORDERED.**
**New York, New York**
**September ___, 2007**

_____
U.S.D.J.